HARRIS, et al. v. CARTER's Administrators, et al.

1. Where a vendor of an estate has made fraudulent representations of title, the vendee is entitled in equity, to a recision of the contract.
2. But where the purchaser has notice of the title of the vendor, and the vendor completes his title before the vendee becomes entitled to a conveyance, he cannot object that the vendor had no title at the time of the sale.
3. A purchaser of an estate, under circumstances sufficient to put him on the inquiry, is considered as affected with notice of an incumbrance.
4. Possession of land is such a circumstance, as should put a party on the inquiry.
5. And the pendency of a suit, involving the title to an estate, is sufficient notice to affect a purchaser.
6. All parties interested, should properly be brought before the Court. But where from the record the rights of a particular party cannot be properly determined, as to him, the bill may be dismissed without prejudice.
7. No decree can be rendered in favor of a defendant, who answers merely, except for costs. If he seeks a decree against the complainant, he must file a cross bill.
8. On a bill for an injunction, a decree for the defendant can direct execution to issue only against the defendant in the execution and his sureties, but not against another party to the contract.
9. In the absence of proof, the answer of a defendant when responsive, must be taken as true.

THIS cause was brought here from the Circuit Court of Madison county, by appeal to reverse a final decree rendered in that Court, on the Chancery side, at November term, 1828, by the Honorable Sion. L. Perry. The facts and circumstances developed by the several bills, answers, exhibits and depositions, are summed up and recited in the opinion delivered in this Court, as follows:

The bill was exhibited on the 2nd of November, 1820, for the purpose of obtaining an injunction and rescinding a contract, entered into between George W. Harris and William W. Harris, with Francis Newman.

It appears that on the 3rd day of October, 1818, Newman and the Harris' entered into a written agreement, by which the former agreed to sell to the latter, one hundred and twelve and one half acres of land, situated in the county of Madison, to be paid for thus, viz: $500 on the first day of January, 1819; $750 on the first day of January, 1820; $1000 on the first day of January, 1821; and by the conveyance of a lot of ground situated in Huntsville, to be made on or before the first day of November, 1818. On full payment being made, Newman was then to make a complete title in fee simple to the Harris'.

The written agreement, after describing the land by its
30

JULY 1830.

Harris et al
v.
Carter's Ad-
ministrators
et al.

location, contains a recital in these words: "Which (mean-ing the land) by partition made by the commissioners for that purpose only appointed, was allotted to the wife of Thomas Hubbard and to the wife of said Francis New-man, two of the heirs and children of the late William O. Murray, the part or lot of said Hubbard having been by them only conveyed to said Newman, &c."

It is alleged that the title to a part of said land was in the wife of Hubbard, who refused to convey to Newman or the Harris', and that the said Newman at and before the sale, falsely and fraudulently represented to them, that he had a good and sufficient title thereto.

It is also stated that a judgment has been recovered against William W. Harris on the note of $750, by Thomas J. Carter as assignee thereof, in the Circuit Court of Madi-son; and that Messrs Beirne and Patton have become the holders of the note of $1000; that the note of $500 has been paid, and the lot conveyed to Newman, pursuant to the agreement of purchase. The precise period of time when the Harris' discovered the alleged defect of New-man's title, does not appear; they however state that they discovered it before the note of $750 became due.

The bill concludes with a prayer, that the judgment in favor of Carter be enjoined; that Beirne and Patton be enjoined from instituting a suit on the note of which they are holders; that the contract with Newman be rescinded; and that he refund the five hundred dollars paid him and reconvey the lot conveyed him upon the footing of the purchase.

Newman in his answer, denies any misrepresentations as to his title, and avers a full and correct disclosure of it to the Harris' at and before the sale. The respondent also states that he had at that time a bond for the conveyance of title from Hubbard and wife, pursuant to which, on the 9th January, 1821, they convey a complete title in fee simple to the portion of land to which they had title; and that respondent and his wife on the 15th February there-after, made a sufficient conveyance in fee simple to the Harris', both of which conveyances he tendered to their attorney, before they had paid the purchase money or de-manded a title. Copies of which are exhibited with the answer, and seem correctly executed and proved.

Beirne and Patton in their answer, admit that they are proprietors of the note for $1000; that they became such in April, 1819; but before they purchased it, they learned

upon inquiring of George W. Harris, that there would be no objection to its payment at maturity, and that a part has been paid; which facts are proved by a deposition, taken at the instance of these respondents.

It further appears, that on the 15th day of May, 1822, the Harris' filed a supplemental bill, setting forth that about the——day of June, 1821, the land sold them by Newman, and about which this controversy is, was sold under an execution, issued on a judgment obtained in October, 1819, by one Waddy Tate, in the Circuit Court of Madison; that at such a sale, the said Tate became the purchaser, and had obtained possession of the land; in what manner it does not appear.

Tate answers the amended bill; protests against being compelled in this controversy to litigate his rights, and insists that he was a fair purchaser for a valuable consideration, without notice of the prior purchase of the complainants.

It also appears from the record, that William W. Harris, one of the complainants, and Thomas J. Carter, one of the defendants, have died, since the commencement of this suit; that as to the former, the suit has been revived in the name of Patrick Austin, his administrator; and as to the latter, in the name of John R. Elliott, his administrator; and that the present parties to the cause are George W. Harris and Patrick Austin, administrators of William W. Harris, deceased, complainants; and Francis Newman, Beirne and Patton, Waddy Tate, and John R. Elliott, administrators of Thomas J. Carter, deceased, defendants.

Elliott answers the original supplemental and amended bill, by denying a knowledge of the several matters charged therein. The record discovers no order making Elliott a party, until after the final decree rendered, but at the same term of the Court; nor does it shew any objection to the manner of his coming in.

By the final decree, Elliott is to have the benefit of this judgment at law, recovered by his intestate, by execution against Austin *de bonis intestatis.* A decree is also rendered for the amount of $750, and interest from the time the note for that sum fell due, against George W. Harris. A decree is rendered in favor of Messrs Beirne and Patton, for the amount of the note and interest, of which they are proprietors; and it is further decreed, that Tate take nothing by his purchase of said land; and that the complainants pay all costs.

From this decree the complainants, and also Tate have appealed to this Court.

HOPKINS, BRANDON and HUTCHISON, for the appellants.

McCLUNG and THORNTON, for the appellees.

This cause was argued at the last term and held under advisement till this term.

By JUDGE COLLIER. The questions offered for our examination are these:

1st. Are the Harris' entitled to a recision of their contract with Newman?

2nd. If they are compellable to perform their contract, is the decree rendered below erroneous?

1st. It is the acknowledged province of equity to rescind contracts, on the application of either the seller or purchaser, when a proper case is offered for its interference. It would be unprofitable here to consider the various causes for which contracts may be rescinded; as the only one which it is pretended exists, is fraud on the part of Newman, in misrepresenting his title to the Harris'.

It is certainly a correct rule, that one who has purchased an estate under the influence of the fraudulent representations of the seller, may rescind the contract, and recover back the purchase money if paid, or avoid its payment if unpaid. But a purchaser, with a knowledge of his vendor's title, cannot object that he had no title at the time of the sale, if he afterwards consummate his title before the vendee has performed the conditions on which he is authorized to demand it. Let us inquire whether the facts presented by the record may not be brought within the operation of the rule as thus qualified.

It may be remarked, that no testimony was offered by the appellants, Harris and Austin, to sustain the allegations of their bill. The agreement of sale recites that Hubbard and wife have "duly conveyed" their portion of the land to Newman. And did it appear that Newman had neither an equitable nor legal title from Hubbard and wife, the misrecital might well be considered such a *suggestio falsi*, as to have authorised a recision of the contract on a timely application. But it has not been made to appear that Newman had not an equitable title, he admits that he has not a legal one, and states that he had a bond for a conveyance

of title from Hubbard and wife, at the time the agreement was entered into. Taking the answer of Newman, so far as it is responsive to the bill as true, the inference is fair, that by the words "duly conveyed," was meant the bond of Hubbard and wife for title.

The alleged misrepresentations as to Newman's title, are positively denied in his answer, which in the absence of proof, must be taken as conclusive upon that point. The two specific grounds relied on why the contract should be rescinded, (1st.) the misrecital in the agreement of Newman's title; and (2nd.) the fraudulent misrepresentations in regard thereto, being negatived, as it is conceived, sufficiently by his answer, the appellants, Harris and Austin, cannot claim a recision for any matter existing anterior to, or arising out of the agreement. Nor is it believed that they are entitled to relief for any cause accruing subsequently. A title was acquired by Newman of Hubbard and wife, before they had demanded, or by the terms of the agreement, were authorised to claim it. And there being an entire failure to establish the fraud complained of, no cause is made out for the interference of this Court.

We have not considered whether the purchasers are placed in a situation more unpropitious to relief, from the circumstance of their notes to Newman, being transferred *bona fide*, and without notice of any objection to their consideration. That question opens an extensive field for inquiry in this country, upon which, as it is unimportant to a decision of the case, we decline entering.

2nd. The decree is proper in directing the injunction against Elliott's intestate to be dissolved, and execution to issue against Austin, *de bonis intestatis*; but in awarding execution against George W. Harris, for the purpose of satisfying this judgment, the decree is certainly erroneous. The judgment is rendered against William W. Harris, and the execution must pursue it. It therefore follows, that a decree which directs execution to issue against other persons, than the administrator of the defendant in the judgment, and the securities in the injunction bond, cannot be sustained. And it is only by force of the statute of 1825, that these latter are made liable to execution.

Nor was it competent for the Court below, to have rendered a decree in favor of Beirne and Patton, for, the amount of the note and interest, which they held by assignment from Newman. They had exhibited no bill

JULY 1830.

Harris et al
v.
Carter's Administrators
et al.

asking the coercion of its payment; and upon their answer, they are only entitled to a decree for costs.   If one who is made a defendant in Chancery would obtain relief against the complainant, his remedy is by cross bill; when the answer has responded to the bill, it prays that the defendant may be dismissed with his costs; and this is the only prayer which it is competent to embrace in the answer.

With regard to the propriety of making Tate a party, it may be remarked that all parties interested should be brought before the Court, that all interests involved may be adjudicated, and litigation cease.   Tate was a party in interest remotely, if not immediately, and was properly before the Court.   Yet the amended bill of the appellants, Harris and Austin, making him a party, and his answers are so succinctly and loosely drawn, as not to enable the Court, in the absence of proof, to render a definitive decree thereupon.   The proper disposition of the bill, making Tate a party, is to dissmiss it without prejudice.   It is not however proper that the appellees should be delayed in a decision of their respective interests, and especially as the record discovers enough to shew that the equity of the appellants, if preserved, is paramount to that of Tate.   They however may have done or omitted to do some act, by which Tate has gained a legal advantage; if they have, their supineness or overweening solicitude to be relieved from a contract, which the depreciation in the value of property has rendered disadvantageous, cannot prejudice the *bona fide* assignees of their vendor.

When one purchases real estate under circumstances which should put him upon inquiry as to the title of him whose interest he purchases, he stands in the same situation, as if he had actual notice of any incumbrance upon it, or of any transfer of right.   The possession of the Harris' was a circumstance which should have put Tate upon inquiry, and if he purchased while they or any one under them was in possession, their equity must prevail against him.[a]

*a* 1 Atk. 490.

Again, the purchase of the estate by Tate, pending this suit, in which the title was litigated, is presumptive notice that Newman had previously parted with his interest in it.

"For if a person purchases an estate pending a suit, involving the question of title to it, he will be considered to be a purchaser with notice; although he were no party to the suit.   This rule is founded upon the idea, that as the pendency of a suit is a transaction in a sovereign Court

'of justice, all people are supposed to be attentive to what passes there.''[a]

As the view we have taken disposes of the case upon its merits, we decline an examination of the remaining points discussed, and direct the following decree to be entered: "This cause being argued by counsel, and due consideration being thereupon had, it is ordered and decreed that the decree of the Circuit Court be reversed, and the original, supplemental and amended bills of the appellants, Harris and Austin, be dismissed without prejudice as to the respective rights of said appellants and the said Waddy Tate, and that the appellees, Beirne and Patton, have leave to proceed on the note of which they are holders.

It is further ordered and decreed, that the appellee, John, R. Elliott, administrator of Thomas J. Carter, have execution of the judgment at law, recovered by the said Carter in his lifetime, against Patrick Austin, intestate, to be levied *de bonis intestatis*, and that he also have execution pursuant to law, against the securities in the injunction bond.　It is further ordered, that the appellants, Harris and Austin, pay the costs incurred in this Court and the Court below, to be levied of Harris, *de bonis propriis*, and of Austin, *de bonis intestatis*."

Reversed and rendered.