6ws469
199  641

## Boggs *against* Varner.

In an action of ejectment, where the defendant claims against a prior and unrecorded title, he may give evidence of valuable improvements made upon the land before notice of the plaintiff's title, in order to entitle him to the character of a *bonâ fide* purchaser for a valuable consideration.

A recital in a deed is evidence of notice to the purchaser of the fact recited, and he will be affected by it so far as it concerns the title to the land purchased; but it will not affect him with notice in regard to the title of any other land than that which is conveyed by it.

The title of a *bonâ fide* purchaser for a valuable consideration is not to be affected by loose, vague and uncertain evidence of the existence of a prior title. If a former owner neglects to record his title, every presumption is to be made in favour of a subsequent purchaser.

ERROR to the District Court of *Allegheny* county.

Wm. L. Boggs and others, heirs of Wm. Boggs, deceased, against James Varner and others. This was an action of ejectment for part of a lot of ground in the city of Pittsburgh. The plaintiffs deduced their title from John Irwin, under whom the defendant also claimed. John Irwin conveyed to John Boggs, reserving a ground rent of $50 a year. John Boggs sold by a parol sale for $500, to William Boggs, the plaintiffs' ancestor, who entered into and continued his possession until 1822, when he went down the Ohio, taking his family with him, but leaving the house and some of his furniture in the care and custody of his sister, intending to return, but he did not. The sister rented the property to a man named Steel, who continued to occupy it until the house and furniture were consumed by fire in 1825.

The defendants, also claiming under John Irwin, gave in evidence a deed from him to James Brown and James Varner, dated 6th September, 1828, for the consideration of $1747, recorded on the day of its date, and a deed from James Brown to James Varner, one of the defendants.

The defendants took the ground that although the plaintiffs' title was originally good, they were not entitled to recover, because the deed from John Irwin to John Boggs not having been placed on record, and the sale from him to William Boggs being by parol, and there being no one in actual possession at the time they purchased, they stood in the situation of *bonâ fide* purchasers for a valuable consideration without notice of the prior title.

The plaintiffs, for the purpose of proving notice of their title to the defendant, offered in evidence the record of a deed from John Irwin to Andrew Scott, for another part of the same lot, which recited, "*Thence by ground demised to John Boggs,*" and the record of a deed from Andrew Scott to James Varner for the same part,

dated 15th Sept. 1821; and in connection with this they offered a deed from James Brown to James Varner, for part of the same lot. These last two deeds were offered for the purpose of showing notice or knowledge in the defendants of the deed to John Boggs. This evidence was objected to by the defendants.

GRIER, (President). A recital in defendants' title papers to a different piece of property, is no notice as regards that in dispute. If the plaintiffs intend to rely on a knowledge which is to conclude the purchaser because he had acted fraudulently, it must be done directly, and not by loose, vague and strained inferences. If the plaintiffs can give any direct evidence of knowledge, it will be received; but we cannot commit testimony to the imaginations of a jury, to affect a man with knowledge from circumstances from which it is no necessary inference.

The plaintiffs excepted to this opinion. The defendants offered evidence of the value of the improvements made by them on the lot in controversy since their purchase, for the purpose of showing themselves to be purchasers for value. The plaintiffs objected, but the court overruled the objection, and sealed a bill of exceptions.

The plaintiffs, as rebutting evidence, offered in connection as follows:

1. A continued possession of the Boggs's up to December 1825.

2. That James Varner during all this period lived on part of what was originally the same lot, and was in habits of daily intercourse with the family of the Boggs's.

3. The notoriety of the title of the Boggs's by everybody in the neighbourhood.

4. And again, the deed from Andrew Scott to James Brown, and from Brown to Varner. And this all for the purpose of showing the defendants' knowledge of the plaintiffs' title.

The court overruled the offer and sealed a bill of exception at the request of the plaintiffs.

The court directed a verdict for the defendants.

*Hamilton,* for plaintiff in error, as to the rejection of the evidence of the deed which contained the recital, cited 10 *Serg. & Rawle* 73; 6 *Serg. & Rawle* 134; 1 *Pr. Wms.* 804; 17 *Johns.* 335; 7 *Cranch* 171; 15 *Johns.* 167; 14 *Johns.* 404; 3 *Binn.* 179; 4 *Binn.* 146; 1 *Whart.* 318; 1 *Atk.* 489; 2 *Freem.* 127–137; 4 *Whart.* 259. As to the admission of the evidence of the improvements made on the lot by defendants, 1 *Vez.* 128; 4 *Yeates* 95; 10 *Serg. & Rawle* 333; 3 *Watts* 238. And as to notice of the plaintiff's title, 2 *Yeates* 211; 1 *Ld. Raym.* 311; 8 *Johns.* 227; 10 *Watts* 195.

*M'Candless,* for defendant in error, on the first bill, cited *Sug. on Vend.* 322; 1 *Johns. Chan.* 574; 2 *Sch. & Lef.* 315; 3 *Mad. Rep.* 26; 2 *Watts* 78; 7 *Watts* 382; 4 *Whart.* 259; 5 *Binn.* 129;

10 *Watts* 412. On the subject of the equity arising from the improvements made by defendants, 4 *Watts & Serg.* 20 ; 3 *Watts* 239.

The opinion of the Court was delivered by

ROGERS, J.—The plaintiffs, who are the children and heirs of William Boggs, deduce their title from John Irwin, who, it is conceded, was at one time the owner of the property. Irwin conveyed to John Boggs a fee simple, reserving a ground rent of $50 a year. John Boggs sold the lot to his brother William Boggs by a parol sale for five or six hundred dollars, and William Boggs, in pursuance of the contract, entered into possession of the premises and continued in possession until the spring of the year 1822, when he went down the river, taking his family with him, but leaving the house and some of his furniture in the care and custody of his sister. It was intended as a temporary absence merely, as his purpose was to return, which he was prevented from doing by an accident which happened to one of his family. The sister rented the property to a man named Steel, who continued to occupy it until the house and furniture were consumed by fire in December 1825. These facts seem to be established by the evidence, and if there was nothing else in the case, the jury would have committed no error in returning a verdict for the plaintiffs.

But the defendants put the case on other and different grounds. They urge that even on the concession that the plaintiffs' title was originally good, still they cannot recover, because the deed from Irwin to John Boggs not having been placed on record, and the sale from him to William Boggs being by parol, and there being no person in the actual possession at the time they made their purchase, they stand in the situation of a *bonâ fide* purchaser for a valuable consideration without notice of the prior existing title. These were the turning points of the cause, to which all others are subordinate. The questions divide themselves into two points. 1. Were the defendants purchasers for a valuable consideration? and 2. Were they purchasers without notice of the plaintiffs' title? On the first point the burthen of the proof is thrown upon the defendants, but on the second, on the circumstances of this case, it is shifted to the plaintiffs.

The defendants, after giving in evidence a deed from John Irwin and wife to James Brown and James Varner for a consideration of $1747 expressed in the deed, and a deed for the same property from James Brown and wife to James Varner for the consideration of $2500, offered to show that improvements were made on the property since the purchase, and the value thereof. The evidence was received on the point of consideration, and for this purpose we think it was competent. That the defendants were purchasers for a valuable consideration seems hardly to have been questioned. The deeds express the consideration on their ·

[Boggs v. Varner.]

face, and as between Irwin and his vendees full value was actually paid, and therefore, even if the court had made a slip on this point, we should feel very reluctant to reverse the cause, as the plaintiffs have sustained no injury. But is such evidence competent to show that the defendants were purchasers for a valuable consideration? It has been ruled that until actual payment a subsequent vendee is not entitled to protection in a court of equity. Now suppose the purchase money is unpaid, would it not be competent for the defendants notwithstanding to protect themselves by proof that,' relying on his title acquired in good faith, they had, before they knew of any adverse claim, expended large sums of money in the erection of valuable improvements upon the premises? Unless they could defend their possession by such testimony, the defendants would suffer great wrong. The plaintiffs, by whose fault in neglecting to comply with the plain directions of an act he has been induced to expend his money, would be suffered to recover the land and the improvements also. This would be contrary to every principle which governs a court of equity. It puts money into the pockets of the negligent at the expense of the innocent purchaser. If the vendee was ignorant of the prior title at the time he made his purchase, any expenditures before he has notice of the former title is competent testimony, because its effect is to put him in the attitude of a *bonâ fide* purchaser for a valuable consideration.

But if on the other hand improvements are made after notice, a different case is presented. The subsequent vendee acquires no equity, because it is his own folly to expend money under such circumstances, and it is not just that he should be permitted to improve the owner out of his title. The subsequent purchaser can only acquire an equity in good faith without knowledge of the former title either constructive or express. But the plaintiffs meet this equity of the defendants by allegation of notice, constructive and actual, at the time of the sale. And to sustain these positions the plaintiffs offered the testimony contained in the several bills of exception. It has been already remarked that the first purchaser having neglected to record the deed from Irwin to Boggs, the *onus* of the proof of notice to the subsequent purchaser is thrown upon the plaintiffs. The presumption always is that the subsequent vendee purchases with good faith. And the evidence of notice should be of such a nature as to convince every reasonable and dispassionate mind that the subsequent vendee knew of the existence of the prior and superior title, or that he ought to have known, inasmuch as there was enough known to him to put him on inquiry, which the law deems equivalent to actual notice.

It is urged, and to this point the plaintiffs' evidence is principally directed, that one of the defendants, Varner, had actual knowledge that the property in dispute was owned by William Boggs, the purchaser from John Boggs, at the time of his purchase

[Boggs v. Varner.]

from Irwin. On both heads evidence was offered to the jury. After giving in evidence the record of a deed from John Irwin to Andrew Scott, which recites " Thence by ground demised to John Boggs," the plaintiffs offered the record of a deed from Andrew Scott to James Varner for the same lots. The deeds were offered to show notice of the recital in the deed to John Boggs. The deed to James Brown also contains the same recital, but the deed from Brown to Varner, though conveying the same property and reciting the same deed, does not contain the recital in its description. But in this circumstance I put no faith, as the deed is referred to, on which the plaintiffs rely to fix the defendants with notice of their title. Notice of a deed is notice of its whole contents, so far as they affect the transaction in which notice of the deed is acquired. 2 *Sch. & Lef.* 315. The recital on which the plaintiffs rely, it must be conceded, is vague and indefinite. " Thence by grounds demised to John Boggs," are the words of the recital; but when it was demised, by whom demised, or how it was demised, whether for a term of years, which would be its natural import, or what in common parlance is called a perpetual lease reserving rent, nowhere appears.

These considerations would be entitled to some weight if the case needed it; but I do not put it on that ground, but think the testimony objectionable for the reason assigned by the court, that it is a recital in title papers to a different piece of property. The evidence would lead to dangerous consequences, for it is impossible for any one to recollect all the recitals in deeds under which he may claim. Let this be held to be admissible and competent to affect a subsequent purchaser with notice, it will follow that no man can safely purchase until a most careful examination and inspection of every deed to which he may be a party, and under which he claims. This has never been so held, but principles the reverse of this have been repeatedly ruled. Thus, notice to an agent to bind his principal must be in the same transaction. 3 *Mad. R.* 28. The purchaser is not bound to carry in his recollection those parts of a deed which have no relation to the particular purchase he was then about to make, nor to take notice of more of the deed than affected his then purchase. *Sug. Vend.* 322, Edit. of 1836; and which is in point. Notice to a purchaser in one transaction will not affect him in another subsequent one. 2 *Sch. & Lef.* 315.

The plaintiffs also offered in evidence a continued undisturbed possession by the Boggs's until Dec. 1825; that James Varner, during all this period, lived on part of lot No. 108, and was in habits of daily intercourse with the family; the notoriety of possession of the Boggs's in the neighbourhood, and in connection therewith, the deed from Scott to James Brown, and the deed from Brown to Varner. Having already disposed of the last part of the proposition, it is enough to observe that we see nothing in the fact

[*Boggs* v. Varner.]

that it is offered in connection with other testimony that varies the question. If inadmissible before, it is objectionable still. We cannot understand how the defendants can be affected by what may appear in a previous transaction, which it is altogether probable they may have forgotten, even if they ever adverted to it at all.

It must be remembered that at the time of the purchase in 1828, no person was in possession, and that the property had been vacant from the time of the fire in 1825, a period of three years. Had any person been living on the property when it was bought by Varner, it is conceded it would be notice to the purchaser; for where there is a clear unequivocal possession, it is constructive and legal notice, because it puts the purchaser on inquiry. 2 *Watts* 275. But to whom must the vendee resort for information of the title? Undoubtedly to the person in possession when the bargain is made; for if the possession is vacant, it supersedes the necessity of further inquiry, for no case has yet been ruled which extends the doctrine of constructive notice so far as to visit him with all the consequences of notice, because he may have known a person to have been in possession at any distant period of time before his contract. The law is not so unreasonable, and upon this point we do not wish to extend it further.

The other parts of the offer were also properly overruled. There is no case where a jury has been permitted to infer the fact of notice merely because the purchaser lived on the adjoining lot to the owner, or was intimate with him, or because it was notorious in the neighborhood that he was the owner. The evidence is too general, uncertain and indefinite to destroy a title for which a valuable consideration has been paid by the buyer. The recording acts were specially intended for the protection of purchasers, and they would be of problematical benefit if a jury were allowed to act or draw inferences to his prejudice on such loose unsatisfactory testimony. The provisions of the Act may be easily complied with and at but little expense, so that owners are left without excuse, and if they will neglect their duty in this particular, it is but just that the consequences be visited on their own heads. A court of equity acts on the conscience; and as it is impossible to make any demand on the conscience of a man who has purchased for a valuable consideration, *bonâ fide* and without notice of any claim on the estate, such a man is entitled to the peculiar favour of a court of equity. As every presumption is in favour of the subsequent purchaser, when the former owner is guilty of neglect, his title cannot be postponed except by evidence which taints his conduct with fraud. And this, it is obvious, ought not to be done by testimony in its nature vague and indefinite, and leading to no certain results, such as that he ought to have known of the prior title because he lived near the owner, in the same town perhaps or on the next lot, that he was well ac-

[Boggs v. Varner.]

quainted with him, or because the title was well known to others. This may all be true, and yet at the time he pays his money he may be ignorant of any other title than his own.   It is not just that inferences should be strained in favour of the person by whose default the mischief has been done.   We think the court was right in rejecting the evidence, because, admitting the truth of it, no legitimate conclusion adverse to the purchaser can be drawn from it.   When you seek to act on the conscience of the purchaser, it must be by evidence direct and certain, not vague and indeterminate.

The court instructed the jury that if they believed the defendants were purchasers for a valuable consideration without notice, they should find a verdict for the defendants.   That the testimony offered to show notice being excluded, it was the duty of the jury to find a verdict for the defendants, as the fact that they were purchasers for a valuable consideration was not contested.   In this instruction we perceive no error.   As there is nothing else in the case which requires special notice, we are of opinion the defendants are entitled to judgment.

                                                      Judgment affirmed.