## CENTER vs. THE P. & M. BANK et al.

1. An unrecorded deed or mortgage is valid and binding between the parties themselves, and passes the legal estate.

2. An assignment of a note is an equitable assignment of a mortgage to secure its payment; and although the legal estate in the lands remain in the mortgagee until the mortgage itself is assigned, yet he holds it in trust for the assignee of the notes, who may proceed in a court of equity in his own name, after the law day, to foreclose against the mortgagor.

3. A mortgagee is estopped from setting up against his assignee a title which dwelt in him at the time of the assignment, or one which he afterwards acquires.

4. If a subsequent purchaser is put in possession of such facts concerning the title of the vendor as would cause a prudent man to make further inquiry before completing his purchase, he cannot invoke the statutes of registration against a prior *bona fide* purchaser for valuable consideration, but is chargeable with the notice required by the statute, and entitled to no protection.

5. If the first purchaser fails to record his deed, the *onus* of proving notice to a subsequent purchaser or judgment creditor is thrown on him.

6. If a person purchase an estate pending a suit involving the question of title to it, he will be considered a purchaser with notice, although no party to the suit; and a bill to foreclose a mortgage on the premises, is a suit involving the title, within the meaning of the rule.

7. *Lis pendens*, which in a chancery suit begins with the filing of the bill and service of subpœna, and continues until the final orders are taken in the case, is notice of every fact contained in the pleadings which is pertinent to the issue, and of the contents of exhibits to the bill which are produced and proved.

8. When a mortgage which is duly recorded recites that the premises are "the same this day conveyed by the said" mortgagee to the mortgagor, "and now reconveyed to secure the payment of the purchase money," the recital is sufficient to charge all persons who claim through the mortgagee with notice of the existence of his deed to the mortgagor.

ERROR to the Chancery Court of Mobile.

Heard before the Hon. J. W. LESESNE.

This bill was filed by the plaintiff in error against L. M. Wilson and the P. & M. Bank. It alleges that, on the 30th May, 1836, William Carothers sold to Jack F. Ross a certain lot of land which it particularly describes, for the sum of $3875 $\frac{10}{100}$, and took his notes payable in one and two years for the purchase money; that at the time of the sale, Carothers made to Ross a deed in fee simple for the premises, and took from Ross a mortgage on the same to secure the payment of the purchase money, in which it is recited, by way of describing the premises conveyed by it, that it is the same land on that day conveyed by Carothers to Ross; that Carothers paid the notes and mortgage of Ross to Robert Center, before the maturity of either of the notes, and received for them the full sum stipulated in them to be paid, and assigned the notes to him; he was then indebted to Center, who took the notes of Ross in absolute payment of so much of Carothers' debt to him, and gave him credit for that sum; that the mortgage was duly recorded, but the deed from Carothers to Ross never was; that Ross died shortly after the purchase.

In October, 1838, the notes secured by the mortgage being due and wholly unpaid, Center filed his bill to foreclose the mortgage, to which Carothers, the vendor and mortgagee, who was also administrator of Ross, Mary T. Ross, and the heirs at law of Jack F. Ross, were made defendants, the former only in his character of administrator. A decree of foreclosure was obtained on the 28th day of May, 1840, and the land sold in pursuance thereof in October, 1840, and the complainant became the purchaser for $800, and then received from the register a deed for the premises. It further sets out, that the deed from Carothers to Ross was never recorded, and that in May, 1840, after the rendition of the decree of foreclosure, the Planters' and Merchants' Bank obtained four judgments

against Carothers in the Circuit Court of Mobile county, amounting in the whole to about the sum of $13,050; that in 1842 Carothers was duly declared a bankrupt, and discharged from all his existing liabilities; that executions have issued on all said judgments against Carothers, and were then in the hands of the sheriff of Mobile county, who had levied them on the lots named in the bill, and who threatened to sell them under said levy; that the judgments of said Bank against Carothers had always been regarded by the Bank as worthless, and as such were sold at auction in 1850, and were bought by the defendant, Wilson, for an inconsiderable sum; that he is now seeking to sell the lands to satisfy them; that immediately on the sale from Carothers to Ross, the latter went into possession of the land, and did constantly retain such possession, either by himself or his personal representatives, until the sale under the decree of foreclosure, when complainant took possession of them, and has been so possessed ever since, holding the premises as his own; that he has put upon them valuable and costly brick houses of the value of at least $3000, which he has paid for out of his own funds; that these improvements were made by him before the sale of the judgments to Wilson, or the levy by the sheriff. The complainant insists, that the judgment lien in favor of Wilson, as purchaser from the Bank, is but an equity, and that his own is a prior equity, and should be preferred to it. The prayer of the bill is for an injunction, and for general relief.

Wilson answers, denying all knowledge of the right of the complainant, of the unrecorded deed to Ross, or of the proceedings in equity on the bill to foreclose; of complainant's purchase under the decree of foreclosure, and of his subsequent possession under that sale. He avers that Carothers has constantly had the possession and control of the premises; that he (defendant) purchased the judgments fairly, in open market, and paid $1000 for them; and insists that the lien of the judgments is superior to any title or right set up by complainant.

The Planters' and Merchants' Bank, by Sidney Smith and David Stodder, its commissioners, answers, saying that the debts on which the judgments were obtained against Carothers were justly due the Bank; that they were sold at auction

48

as its assets, and bought by the defendant, Wilson; that the Bank has now no interest in them. It further answers, that the officers and agents of the Bank have been so often changed, that the commissioners cannot state, either on their knowledge or belief, whether the Bank had notice of the transactions out of which the complainant's claim arose as set forth in his bill. The answer disclaims all interest on the part of the Bank.

A certified copy of the record and proceedings in the suit by Center against the representatives and heirs of Ross, on the bill to foreclose the mortgage from the latter to Carothers, was offered in proof at the hearing, and the agreement of the solicitors of the parties, by which it is admitted that H. O. Brewer, a witness for the complainant, would prove, that Carothers assigned and transferred the notes of Jack F. Ross, given to him for the purchase of the lots in controversy, to Robert Center; that Carothers was indebted to said Center in a large amount, and these notes were given and received by him before maturity, absolutely and in good faith, in payment of said indebtedness, to the amount they called for; that the notes are correctly described in the bill; that Carothers' account with said Center was credited at the time for said amount so paid; that the transaction was *bona fide;* that there was no written assignment of the mortgage, within the knowledge of the witness; that the notes were merely endorsed and handed over, together with the mortgage to Center; that the improvements on the lots in controversy consist of three brick tenements; that they are valued at $3000, and were built in the year 1843; that Carothers superintended the building, but Robert Center paid all the money for the same; that witness was his agent, and paid out the money as the bills came in; that Center took possession after the chancery sale in 1840; that the lot was then vacant, and witness thinks it never had been occupied by any one from the time of the sale to Ross up to that time; that the lot lay unoccupied and no visible possession, until 1843, when the buildings were commenced as aforesaid; that witness was agent for said Center, and had charge of said buildings and lots ever since they were built, and kept a regular account on his books concerning them; that neither Carothers, nor any one else, ever pre-

tended to have any claim, or ever doubted or questioned Center's right, nor was any defect in the title known to Center, or witness, until the levy was made by the sheriff; that Carothers has attended to the renting out and obtaining tenants for the buildings, but he never occupied them himself, and never claimed the rents, or set up any adverse interest or claim; that after Carothers was discharged in bankruptcy, Center agreed with Carothers that, whenever he could or would pay him for said lot and premises, at what they cost Center, at the time of such payment Center would make the property over to Carothers' children, and had given Carothers until 1851 to comply; and that it was this promise of Center's which caused Carothers to be managing and attending about said premises; thinks Center gave Carothers a writing containing this agreement, or an agreement of this character in substance; that this promise to Carothers was made before the buildings were commenced.

It was admitted also by the solicitors of the parties, that executions issued regularly on the judgments in favor of the Bank against Carothers, within a year and a day as prescribed by the statute, and were regularly re-issued until 1843; and that no execution issued after that until 1851. It was also admitted, that the deed of the master in chancery, to Center, for the premises, when sold under the decree of foreclosure, should be considered as proved and in evidence.

Robert Center having died intestate pending the suit, the case was regularly revived in the name of Edwin C. Center, the only heir at law of the complainant.

On this state of pleading and proof, the case came on for final hearing, when the Chancellor dismissed the bill. From this decree of dismissal the complainant prayed for, and obtained an appeal to this court, and here assigns for error the decree of the Chancellor dismissing the bill.

John T. Taylor, for appellant:

1. The defendants have not denied in their answers notice of our equity, which they should have done, if they desired to avail themselves of the rights of *bona fide* creditors without notice, under the statute. 2 Edwards' Chancery R. 256, 259; 2 Johnson's Ch. R. 155; 1 ib. 574; Story's Equity Pl. 863.

2. The statute of registration affects the legal rights of the plaintiff, and leaves his *equities* untouched : 4 Dana 258, and cases cited; 1 Freeman's Ch. 85; and the specific equitable right to land will be protected in a court of equity, against the general lien of a subsequent judgment.   2 White & Tudor's Leading Cases, 467; 3 Hare, 25 Eng. Ch. R. 415; 4 Dana 258; 7 S. & M. 15; 2 Paige 266; 2 Barb. Ch. 206–7; Ired. Ch. R. 121; 1 Paige 125; 7 Blackf. 249; 3 Des. 74; 6 Paige 350; 3 Barb. 242.

3. At the time the judgments were rendered, the bill under which plaintiff purchased was pending against Carothers and Ross to foreclose, and it is immaterial whether the decree in that case was against Carothers in his individual or representative character; in either case, under the circumstances, he would be estopped.   9 Ala. 921; 16 ib. 686, and cases there cited.

4. A tenant by *elegit*, or a judgment lien before sale, stands in the shoes of the debtor; he can set up no rights that the debtor could not, and he is supposed to know the contents of the deeds under which the debtor holds, and is bound by the recitals, as though they had been made to himself.   In this case, at the time the judgment was rendered, Carothers, the debtor, held in no other way than under the mortgage, and in subordination to it.   This mortgage was made directly to Carothers, and recorded, and recited, "this being the same land this day conveyed to me (Ross) by said Carothers, and now re-conveyed to secure the purchase money."   18 Ala. 742; 3 Barb. Ch. 52; 1 John. Ch. 574; 10 ib. 374.

5. Suppose the deed from Carothers to Ross was void in Ross' hands for want of registration; then the case would stand as if he held the mortgage on land to which he held a prior or superior legal title.   Now suppose he sells this mortgage and notes, for a full consideration, to an innocent purchaser, without informing him of his older and better title, (as he did to Center,) would he not be forever estopped from setting it up against the mortgage?   Most assuredly he would. The assignment to Center was before the judgments; and when they vested, Carothers in chancery was a mere trustee for Center, and those claiming under him would be bound by the same trusts.   14 Shep. (29 Maine) 341; 6 Halstead 385; 10 John. 374; 19 Ala. 431, 437.

Therefore, the registry acts have no bearing on us.  We need not claim under Ross, nor are we bound by his defaults. We can claim directly from Carothers.  We paid him for the land in full, and he was bound to make us a deed whenever called for; and having the oldest equity we must succeed in this court.

J. C. BOLLING, contra:

1. The statute of registration of this State places a subsequent judgment creditor and a purchaser on the same footing, and makes any right to land which is unrecorded, void as to either of them.  In this respect the statute differs from any other. 9 Ala. 409, 437; 3 ib. 560; 4 ib. 543; 6 ib. 801; 10 ib. 451; 12 ib. 247, 646; 8 ib. 866; 2 White & Tudor's Leading Cases in Equity 108; 3 A. K. Marsh. 220.

2. The assignment by Carothers to Center of Ross' notes, at most, only evinced an intention on his part to make the land liable for the debt; and, as between the parties themselves, that intention would be valid, and would amount to an equitable mortgage.  But the defendants here stand in the same light as a subsequent purchaser; and the legal title to the land having always been, even to this day, in the name of Carothers on the record, and it being admitted that defendants had no notice, would they, if they had purchased from Carothers, have been bound by any equitable mortgage of which they had no notice in fact, and which does not anywhere appear on the records?  2 Story's Equity § 1020; 1 ib. §§ 395, 396; 2 White & Tudor's Leading Cases 108; 8 Ala. 866; 12 ib. 646.

3. The registration of the mortgage from Ross to Carothers, was not notice to us.  23 Maine R. 165, 170; ib. 246; 2 White & Tudor's Leading Cases 162.

4. An open, visible possession—an actual occupancy—is essential to fix constructive notice on a subsequent purchaser. 9 Ala. 436; 4 Kent's Com. 171, note; 2 Sumner 486; 2 J. J. Marsh. 180; Le N eve v. Le Neve, 2 White & Tudor's Leading Cases 21.

5. If defendants were not bound to take notice of any equitable mortgage, unless they had either actual or constructive notice of it, which they had not in this case, then they are

not bound to take notice of any proceedings under the equitable mortgage; nor can the decree in that case affect a subsequent purchaser, unless the party through whom he claims was individually a party to the suit, so as to make it a *lis pendens.* And it is held by many authorities, that notice arising from *lis pendens* often operates unfairly, and is not to be extended beyond the cases to which it strictly applies. 2 White & Tudor's Leading Cases 157; 20 Wendell 260; 14 Ohio 109, 323; 24 Pick. 221; 22 ib. 231; 1 Johns. 566; 1 Story's Equity 406.

6. Center cannot recover for improvements, as the doctrine of adverse possession does not apply to a judicial sale; nor can any one encumber, in any way, the property of a debtor liable to be sold under execution. 14 Ala. 350.

7. A mortgage cannot be assigned by a mere delivery of the deed, so as to pass any interest in the lands. 15 Mass. 236; 2 Greenl. 322; 5 Halst. 156; 23 Maine 345.

8. In this case, Center only released a debt; and the mere release of a debt, without the payment of money, or release of security, is not a valuable consideration. 1 Smedes & M. Chan. 45; Freeman's Ch. 238, 395; 2 Smedes & M. 513.

9. The doctrine of *lis pendens* originated in necessity, and is simply, that a party purchasing the subject matter of a suit, shall be bound by the decree or judgment rendered for or against his vendor. In the foreclosure suit in this case, the decree was, that Carothers, as administrator, should pay the money due out of the assets of the deceased, or that the heirs should be foreclosed. If we had bought of the heirs, the doctrine of *lis pendens* would apply; but not to us, who hold under Carothers as an individual, and whose right has never been foreclosed. In this case, the only decree that could have been rendered was, that Carothers, as the personal representative, should pay over the money, or that the heirs of Ross should be barred; and not, that Carothers' right should be foreclosed, or in any way affected. 14 Ohio 109, 323; 16 Ala. 686; Story's Equity Pleadings § 790; Leading Cases in Equity, vol. 2, part 1, 157, and citations there made.

10. In the foreclosure suit, no final decree was rendered, until October, 1840; the decree in April, 1840, was merely a decree of sale, and allowed sixty days for the payment of

the money; while the Bank judgments were rendered in May, 1840, before the expiration of the sixty days, and six months before the sale of the property and Center's purchase. The decree was not, substantially, between the same parties now litigating. Story's Equity Pleadings §§ 790 to 794.

LIGON, J.—In considering this case, we will first examine it with reference to the relative rights of Carothers, Ross, and the complainant; and then in reference to those of the complainant, the Planters' and Merchants' Bank, and Wilson, who became the purchaser of the judgments of the Bank against Carothers.

1. The first branch of the inquiry is surrounded by no difficulties whatever; for, as between Carothers, the vendor, and Ross, the vendee, and his heirs, the fact that the deed of the former to the latter remains unregistered, is wholly immaterial. It is clear that this conveyance is good and valid between them, whether it is ever recorded or not, and vests the legal estate of the lots in Ross.

So, also, the mortgage from Ross to Carothers, to secure the payment of the purchase money, after the law day, reinvests Carothers with the legal title to the premises, and he may either foreclose it in equity, sue at law and recover the possession of the lots, or, if he can do so peacefully, he may enter into the possession without suit, and hold them at law against his mortgagor.

But, by the assignment of the notes secured by the mortgage to Center, Carothers has invested him with all the equitable rights under that instrument which originally pertained to him as mortgagee. The mortgage is but an incident to the debt, and passes to the assignee of notes upon their assignment. 'Tis true, the legal estate in the mortgage lands is still in the mortgagee, until the mortgage itself is assigned; but he holds it in trust for the holder of the notes, who, without an assignment of it, may, after the law day, proceed in his own name, in a court of equity, to foreclose it against the mortgagor. Carothers will not be allowed, after the assignment of the notes, and the delivery of the mortgage to Center, to set up title in himself in opposition to the mortgage, even if such claim of title be independent of, and paramount to that in-

strument. To permit this to be done, would be to sanction a fraud; and it will not be tolerated that the mortgagee shall receive of his assignee full value for the mortgage premises, and then set up against him another title which dwelt in him at the time of the assignment, or one which he afterwards acquires. He is estopped from denying or arraigning the title he has sold.

As between Carothers, Ross and Center, the last is to be preferred. He has paid the purchase money for the lands in good faith, and has, in equity, a lien on the land on that account, as against Carothers; and as against Ross, and those who claim under him, he has all the rights which belong to the mortgagee of a duly registered mortgage.

2. But how stands the case between Center, the Planters' and Merchants' Bank, and Wilson, the purchaser of the judgments of the Bank against Carothers? It is contended that the Bank is the creditor of Carothers, without notice of the conveyance from him to Ross, and as such should be preferred to Center.

It is important that this claim should be examined in reference to that class of creditors which is protected by the statutes of registration. It has been repeatedly held, both in this State and Mississippi, as well as in other States in which the acts of registration operate in favor of creditors, that the term "*creditor*" in the act does not mean a creditor at large; but must be intended to mean such creditors only as have reduced their demands to judgment, and by this means have acquired a lien upon the lands of their debtor, and the right to appropriate it to the payment of their debts. Andrews et al. v. Burns' Admr., 11 A. R. 691; Ohio Life Insurance and Trust Company v. Ledyard, 8 A. R. 866; Daniel v. Sorrells et al., 9 A. R. 436; Mooney v. Dorsey et al., 7 Sm. & Mar. 15.

Until judgment is obtained by the creditor, he stands, with regard to the *bona fide* sale and conveyance of the lands of his debtor, as an utter stranger without any right to notice, and he cannot complain of want of notice of an unrecorded deed.

The right of the Planters' and Merchants' Bank to notice of conveyances of real estate made by Carothers, begins on the 25th day of May, 1840, the date of its judgments against him; and it becomes necessary that we refer to dates, and ex-

amine the facts disclosed by the record in this case, in order to ascertain the condition of the parties, with respect to their title to the premises in dispute at that time.

The deed from Carothers to Ross for the lots in controversy, dated 30th March, 1836, was never recorded. The mortgage from Ross to Carothers, of the same date, made to secure the payment of the purchase money, and reconveying the lots bought of Carothers by Ross, and conveyed by Carothers to Ross on that day, was recorded according to the requirements of the statute. In this mortgage, the premises conveyed are described in part as "being the same lots this day conveyed by said William Carothers to the aforesaid Ross, and now reconveyed to secure the purchase money." Carothers, being largely indebted to Center, assigned Ross' notes for the purchase money to him, and at the same time delivered him the mortgage. This was shortly after the notes and mortgage were made, and before either note fell due. Center gave Carothers credit on his indebtedness to him for the nominal amount of Ross' notes at the time they were endorsed to him, and agreed to receive them in absolute payment of so much of his debt.

On the 30th May, 1838, the last note from Ross to Carothers for the purchase money became due; and as the whole purchase money was unpaid, Center filed his bill on the chancery side of the Circuit Court of the county of Mobile, on the 19th of October, 1838, to foreclose the mortgage. Ross having died in the intermediate time, Carothers and Mary T. Ross were appointed administrator and administratrix of his estate, and, with his heirs at law, were made defendants to the bill for foreclosure. Subpoena issued on the bill, and was served on Carothers on the 25th of October, 1838. On the 12th of April, 1839, an *alias* subpoena was served on Mrs. Ross, who was the widow, as well as the administratrix of Jack F. Ross, deceased. The heirs, being non-residents, were brought in by publication; the order for this purpose was made in open court on the 1st day of January, 1839. After publication made, a guardian *ad litem* for the minor heirs was appointed on the 23d November, 1839, who filed his answer on the 16th of March, 1840. The parties being all in, the Chancellor, on the 21st of May, 1840, by interlo-

cutory decree, declared the mortgage duly established, and ordered the master to ascertain and report what was due upon it; and on the 25th of the same month, the master having made his report, the Chancellor pronounced a decree of foreclosure and sale, but allowed the defendant sixty days within which to pay the mortgage money reported by the master to be due. The money was not paid, and the register sold the premises under the decree, on the 1st Monday in October, 1840 ; and Center, the complainant in that bill, became the purchaser, and received from the register a deed which was duly recorded. During all this period the lots were unimproved, and unoccupied. In 1843, Center entered upon the lots, and improved them to the amount of $3000, and, through his agent, let them to tenants from year to year, until they were levied upon by the sheriff of Mobile county under executions issued on the judgments in favor of the Bank against Carothers, the vendor of Ross. Wilson purchased the judgment at a sale of the assets of the Bank, made during the year 1850, and directed the levies to be made.

At this point of time, Center filed this bill, in which it is expressly charged that the Bank had notice of the sale and conveyance of the lots by Carothers to Ross, as well as of Center's interest as set forth in it, and of the pendency of the mortgage suit, before it obtained its judgments. The commissioners who file the answer for the Bank neither admit nor deny this allegation ; but say that the officers of the Bank have been frequently changed since these transactions are alleged to have taken place; that they were not then in office, and consequently can neither admit nor deny the charge, but they have no knowledge of it, nor any information or belief.

Wilson is also charged with a knowledge of these matters, and notice of Center's title before he purchased the judgments; but he answers, denying these allegations in a full and artistic manner.

Executions were regularly issued on the judgments, until sometime in the year 1843 ; but no effort had ever been made to levy them on the premises in dispute, until Wilson purchased them in 1850, ten years after they were obtained.

These facts premised, let us return to the inquiry as to the

relative legal and equitable rights of the parties to this suit, at the time the judgment of the Bank was obtained, to wit: on the 25th day of May, 1840.

At this time the lien of the Bank on the real estate of Carothers commences; and unless notice, either actual or constructive, of the conveyances of the lots from Carothers to Ross, can be brought home to it at or before that time, as well as of the subsequent conveyance to Carothers by Ross, and the assignment of the mortgage debt, with the delivery of the mortgage from Carothers to Center, the legal right of the Bank to enforce its judgment lien by issue and levy of execution must be conceded.

It may be here remarked, that when a direct and positive charge of notice is made in the bill, and the answer meets it, not by a denial, but by an allegation of want of information, a less amount of proof is required to make good the charge. Indeed, such answers are never favored, and a vague denial of this sort is always received by the court unfavorably. A defendant is not at liberty thus to put in issue allegations, which he may fully believe to be true, and thereby take the chances of the plaintiff's being unable to establish them by strict proof. Baily v. Wilson, 1 Dev. & Bat. 182.

The rights of judgment creditors and subsequent purchasers for valuable consideration, under our statutes of registrations, must stand upon the same footing, and the notice which is good against one, will also prevail against the other. Smith & Co. v. Zurcher, 9 A. R. 208; Avent v. Read, 2 Stew. 488.

It has never been held that the registration of a prior deed is the only notice of adverse title, or claim of title to the premises in dispute, which will prevail against the title of a subsequent purchaser for valuable consideration. On the contrary, it has been repeatedly held, and may now be considered as settled law, that if the subsequent purchaser be put in possession of such facts concerning the title which the vendor offers to sell, as should cause a prudent man to inquire further before he would proceed with the purchase, he will be charged with the notice required by the statute; and if he still goes on to complete his purchase, he does so at his own peril, and will not be allowed to invoke the protection of the

statute of registration. Avent v. Read, *supra ;* Harris et al. v. Carter, 3 Stew. 233; Scroggins v. McDougall, 8 A. R. 382; Burt v. Cassety, 12 A. R. 734; Curtis v. Munday, 3 Met. 405. When a second purchaser is affected with such notice, he can acquire no equity, because it is his own folly to expend money under such circumstances ; and it is not just, that by such purchase, he should be permitted to deprive the first purchaser of the title he has acquired, by sale made to him *bona fide,* and on which a full and valuable consideration has been actually paid to the vendor. Such second sale would be fraudulent in the vendor; and if the subsequent purchaser is, or, from the circumstances surrounding him, ought to be in possession of facts sufficient to put him on his guard, he becomes *particeps faudis,* and is entitled to no protection. Boggs v. Varner, 6 Watts & Serg. 469.

Where, however, the first purchaser fails to record the deed, which is the evidence of his title, as is the case here, the *onus* of the proof of notice is thrown upon him. The presumption is always in favor of the *bona fides* of the demand of a judgment creditor, and that his lien was fairly obtained. The evidence of notice should be of such a nature, as to convince every reasonable and dispassionate mind that the creditor knew of the prior and superior title; or that he ought to have known, inasmuch as there was enough known to him to put him on the inquiry, which, we have already seen, is, in law, equivalent to actual notice. If, after this, he persists in an attempt to charge the lands with the satisfaction of his judgment, his conduct becomes fraudulent, and a court of equity, when its aid is invoked, will step in between him and his victim, and stay him forever by injunction.

In the case under consideration, the plaintiff relies upon two circumstances to affect the Bank with notice of his claim, and of the conveyance from Carothers to Ross, at the time its judgment was obtained; first, the pendency of the suit to foreclose the mortgage ; and second, the recital in the deed of mortgage in describing the premises conveyed by it. If these are sufficient, they will affect Wilson, and all others within the State as well as the Bank, with the notice necessary to protect the plaintiff.

On the first point, an examination of the dates herein be-

fore recited will show, that the judgment of the Bank was obtained pending the suit for foreclosure, concurrently with the decree of foreclosure and sale, but before the final orders could have been, or were taken under that decree. It may be here remarked, that the record in that suit shows, that it was prosecuted in good faith, and with all reasonable diligence. Mr. Sugden, in his treatise on Vendors, says: "*Lis pendens* is, of itself, notice to the purchaser, unless it be collusive, in which case it will not bind him." 2 Sug. on Vend. 281. Mr. Newland, in his work on Contracts, lays down the rule, that, "if a person purchase an estate, pending a suit involving the question of title to it, he will be considered a purchase with notice, although he were no party to the suit. This rule is founded upon the idea, that as the pendency of a suit is the transaction of a sovereign court, all people are supposed to be attentive to what passes there." Newland on Contracts 506; see also Harris et al. v. Carter, 3 Stew. 233; Chaudron v. Magee, 8 A. R. 570. The *lis pendens* in a chancery suit begins with the filing of the bill and service of subpœna, and continues until the final orders are taken in the case. 2 Sug. on Vend. 281–285; Chaudron v. Magee, *supra.* A bill to foreclose a mortgage on the premises, is a suit involving the title within the meaning of the rule, (Chaudron v. Magee,) and consequently amounts to notice to all persons claiming an interest in the lands in controversy.

*Lis pendens* is notice of every fact contained in the pleadings, which is pertinent to the trial of the matter put in issue by them; and, in a chancery case, of the contents of exhibits to the bill which are produced and proved. In this case, the bill sets out and exhibits the notes of Ross to Carothers, their assignment to Center, and the mortgage deed of Ross to Carothers, on the premises in dispute, to secure the payment of the notes which were given for the purchase money. This deed describes the premises conveyed by it, first by their location in the city of Mobile; then, by their metes and bounds, and contiguity to streets, and the lots of conterminous proprietors; and lastly, as "being the same this day conveyed by the said William Carothers to the aforesaid Ross, and now re-conveyed to secure the payment of the purchase money." This is sufficient to put all persons upon the

look out, who assert an interest in the lots, derived through Carothers, subsequent to the 30th day of May, 1836, the day on which this mortgage was executed. It is also sufficient notice of Center's interest in the premises, to give to him a prior right and paramount equity to have satisfaction of the mortgage debt out of the premises in dispute, and it cannot be disturbed by the subsequent judgment set up in the answer of the Bank. Wilson, the assignee of the Bank, is in no better condition than the Bank itself; for he is also affected by the same notice, and by the further fact, that seven years before his purchase, Center had entered upon and improved the premises to a large amount, and constantly occupied them by his tenants, until the judgments were bought by him, and was so in possession when the sale to Wilson was made.

It is needless to reason for the purpose of showing that Carothers, through whom both Wilson and the Bank claim, had notice of the claims of Ross and Center. He was a party to all the transactions from which they derived their right, and, indeed, the only actor in them who seems to have been profited. The fact that he was made a party in the suit for foreclosure in his character of administrator of Ross only, and not in his individual capacity, can make no difference. Had he been no party to that suit, yet, if he claimed an interest in the premises, it would have affected him with notice, as it seems he was within the jurisdiction of the court pending the suit. We have already seen that in cases of this kind it is the subject matter, and the parties to the suit, which is to be looked to on the question of notice; and here they are identical.

It results from what has been said, that Carothers, the Bank, and Wilson were all affected with notice before the judgments were obtained. If, under such circumstances, the defendant Wilson invests his money in the purchase of the judgments, he does so with his eyes open, and must incur the loss which the law rightfully visits upon a speculation so rash and unjust, and so completely in fraud of the complainant's rights, of which he is presumed to have had knowledge.

There is another circumstance in relation to the Bank, well worth consideration, especially in connection with the faint denial of notice contained in its answer. It is this: The

judgments in its favor against Carothers, were obtained in May, 1839, and executions were regularly issued on them until some time in the year, 1843; and yet, no effort seems ever to have been made to levy them on these lots; and although it continued to own and control them for more than ten years, still no such effort was ever made. It would not, perhaps, be a rash presumption to suppose that this forbearance arose from a knowledge of the true state of the title.

The recital by way of description, in the mortgage from Ross to Carothers, which was recorded within the time required by law, three years before the judgment, although it does not amount to actual notice of the contents of the deed from Carothers to Ross, yet, it is notice of its existence, and is sufficient to put one who claims through Carothers, upon the look out, and direct him to the source whence full information may be obtained. In the exercise of ordinary prudence, both the Bank and Wilson should have followed up the suggestion thus given, and inquired into the true state of the title. The mortgage is not between persons who are strangers to the title, even if it be as the defendants here claim it to be. One of the parties to it is the person through whom they assert their interest, and the premises described are those they have levied on and are seeking to sell. A resort to the deed book of the clerk of the County Court of Mobile county, and an examination of the land deeds to which Carothers is a party, would have also informed them that these lots had been conveyed to Ross. This examination they should have made; and whether they did so or not, they will be held to know all that these records would have revealed, had such an examination taken place. Boggs v. Varner, 6 Watts & Serg. 469; Brandt v. Van Cortlandt, 17 John. 335; King v. Riddle, 7 Cranch 168; 3 Bin. 175; 5 ib. 140.

Since it appears that the defendants are not judgment creditors without notice, it is unnecessary to say what would have been the rights of the parties, if the fact of notice had not been proved; or, in other words, what would be the result in a controversy between one who, under a parol agreement for the sale of lands, has paid the full amount of the purchase money, but has never entered into actual possession of the premises, and a judgment creditor of his vendor, who is unaffected with notice of such sale.

The decree of the Chancellor dismissing the bill must be reversed, and a decree here rendered perpetuating the injunction at the costs of the defendant Wilson.

GIBBONS. J., not sitting.