## Case No. 6,512.

### HINDE et al v. VATTIER et al.

### [1 McLean, 110.] [1]

Circuit Court, D. Ohio. Dec. Term, 1830.[2]

EQUITY PRACTICE—PARTIES— EJECTMENT—FRAUD-
ULENT CONVEYANCE—DEPOSITIONS—PROOF
OF MARRIAGE—SPECIAL REPLICATION.

1. Where an individual is made a party, who is not within the jurisdiction of the court, on filing his answer and disclaiming all interest in the case, the bill may be dismissed as to him and the court may sustain jurisdiction as to the other parties.

[Cited in Heriot v. Davis, Case No. 6,404.]
[See note at end of case.]

2. Where the bill assigns as a reason for not making a person a party, that he is not within the jurisdiction of the court, the court will take cognizance of the cause in certain cases.

3. An agreement to admit certain depositions not regularly taken, and between other parties as evidence, extends to the final termination of the cause, though it should be taken to the supreme court and sent down for further proceedings.

4. A deed not fraudulent, if procured to be made by a father to his infant son, in payment of a just debt, though the father be embarrassed in his circumstances.

5. A purchaser who has notice of such facts as with ordinary diligence, would lead him to a full knowledge of an outstanding equity, is a purchaser with notice.

[Cited in Carr v. Hilton, Case No. 2,437.]
[Cited in Parker v. Foy, 43 Miss. 260; Great Falls Bank v. Farmington, 41 N. H. 42; Woods v. Wilson, 37 Pa. St. 380; Janvrin v. Janvrin, 60 N. H. 173.]

6. An instrument of thirty years standing, not impeached, need not be proved by the subscribing witness.

7. Marriage proved by general reputation, cohabitation, and the express recognition of the wife in the will of the husband.

In equity.

Mr. Clay, for plaintiffs.
Mr. Caswell, for defendants.

OPINION OF THE COURT. This bill was filed to obtain a title to lot 86, in the city of Cincinnati. All the parties claim under Abraham Garrison, who, it is alleged, sold and conveyed the lot to William and Michael Jones. The sale and payment of the consideration are shown by the following receipt, signed by Garrison: "Received, Cincinnati, 10th September, 1790, of William and Michael Jones, fifty pounds, thirteen shillings and three pence, in part of a lot opposite Mr. Conn's in Cincinnati, for two hundred and fifty dollars, which I will make them a warrantee deed for, on or before the 20th day of this instant." The deed, it is stated, was executed in pursuance of this agreement, but was afterwards lost. And on the 26th March, 1800, William Jones, acting for himself and Michael Jones, conveyed the lot to Thomas Doyle,

Jr., then an infant, whose father, Thomas Doyle, took possession of the lot in his son's name and retained the possession until his death. Thomas Doyle, Jr., having survived both his parents, died under age in the year 1811, leaving Belinda, a sister by the mother's side, his heir at law. Thomas S. Hinde married Belinda, who deceased, leaving several children, in whose behalf he prosecutes this suit. In 1814 Hinde alleges he took possession of the lot, placed a tenant upon it, and in the year 1819 obtained a deed of confirmation from Michael Jones. And the bill charges that James Findlay, Charles Vattier and others, having full knowledge of the complainant's title, but discovering that Garrison's deed was lost, procured another deed, or some one of them, from Garrison for the same lot, and have turned the complainant's tenant out of possession. Findlay in his answer states, that having obtained a judgment for a large sum against Charles Vattier, he received in satisfaction thereof, a conveyance of lot No. 86, with other property, and he took possession of the lot. In 1815, being informed that Garrison had a claim to the lot, and as he could find no deed on record, he purchased it from him for seven hundred dollars, and a conveyance was executed. Before this he had heard of the sale of the lot by the sheriff, as the property of Doyle, and that Vattier purchased it. Vattier states he purchased the lot for twenty dollars at sheriff's sale, as the property of Thomas Doyle; but, neither the return of the sale nor the deed of the sheriff can be found. He held the lot until he conveyed it to Findlay, and afterwards in 1818, Findlay re-conveyed it to him, and sometime after this he conveyed it to William Lytle. Lytle in his answer states, that in 1818 he purchased a part of lot 86 from Vattier, for fifteen thousand four hundred dollars. He knew nothing of the claim of Thomas Doyle, Jr., but before his purchase he heard that Hinde had taken possession. The defendant Ritchey purchased the part of the lot which James Findlay had conveyed to Abraham Garrison, Jr. A supplemental bill was filed, and also a bill of revivor, which represented the death of Belinda, wife of Hinde, whereby he acquired a life estate as tenant by the courtesy, and also making Garrison a party. It also represented that James Bradford, Thomas Doyle and John Bradshaw were brother officers in the army; that Bradshaw executed a voluntary bond to Thomas Doyle, Jr., the son of Thomas Doyle, binding himself to convey to him two hundred and fifty acres of land, part of a larger tract that was valuable. This bond was delivered to Doyle, the father, for the benefit of the son, who afterwards sold the land to Samuel C. Vance, for a considerable sum of money, which was paid. To indemnify his son for this sum of money which the father received he procured lot 86 to be conveyed to him, which was stated publicly when the conveyance was execut-

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Reversed in 7 Pet. (32 U. S.) 252.]

ed. The father was then indebted, but not insolvent. After the execution of the bond to Thomas Doyle, Jr., Bradshaw died, leaving his whole estate to Thomas Doyle, the father. The estate of the father on his decease descended to his son, and on his death to his half-sister Belinda. The sale to Vance was confirmed by Hinde, after he became interested in the estate. It is stated that this lot was never sold on execution as the property of Doyle, but it remained open and unoccupied until 1814, when Hinde took possession, by placing a tenant upon it. And the supplemental bill further states that Vattier must have become acquainted with the state of the title, as the deed from Jones which recites the deed from Garrison to the Jones's was on record. And Vattier took depositions to prove that the consideration on which the conveyance was made to the son, was paid by the father. The conveyance of Vattier to Findlay is then stated, the deed from Garrison to Findlay, and also the re-conveyance from Findlay to Vattier. In his answer, Garrison admits the sale and conveyance to William and Michael Jones, and the payment of the purchase money. He disclaims all interest in the controversy, and prays to be dismissed, he being a citizen of the state of Illinois. In his answer to the supplemental bill, Vattier sets up fraud and denies the material facts, and says that the lot was sold on execution, but that a mistake being made in the deed of conveyance, the mistake was never corrected. Afterwards Vattier, on leave, filed a supplemental answer, stating that when the original bill was filed on the 5th October, 1814, Hinde and wife executed a deed to Alexander Cummins, conveying the lot in fee simple, which deed was duly recorded and a copy of it is made a part of the answer. The complainants, in their replication, admit the execution of the deed to Cummins, and aver that it was intended to vest the right to the lot in the said Cummins in trust for the said Hinde, to be held by him in trust for the heirs of his wife. And that the said Cummins did on the same day, the 5th October, 1814, convey the lot to Hinde. To this replication the defendants have filed a rejoinder. From the pleadings it is evident that neither Findlay nor Lytle has any interest in the case. The conveyance to Lytle by Vattier having been rescinded on finding that the latter had no title under the sheriff's deed, and the bill, therefore, as to these defendants may be dismissed. And, as there is no proof in the case which shows a notice to Ritchey, who purchased from Abraham Garrison, Jr., the bill must stand dismissed as to him.

The first question which is raised in the argument is, whether the court can take jurisdiction of the case, as Abraham Garrison is a citizen of Illinois. Some years ago this case was brought to a hearing in this court, and a decree was rendered, Garrison not being a party. This decree on being appealed to the supreme court, was reversed on this ground, and the cause was sent down for further proceeding. [1 Pet. (26 U. S.) 241.] It was under these circumstances that Garrison was made a party; and if this shall deprive the court of jurisdiction, it is clear from the decision of the supreme court, that the court can take no jurisdiction in the case. Garrison was held to be a necessary party as the equity set up by the complainants is claimed under him; and it is proper for the court to see, that in making a final decree his interest shall receive no prejudice. It is said that he should be a party as he might controvert the instrument signed by him, or deny the payment of the consideration. Now, it is evident no decree is prayed against Garrison, and it is difficult to see, as he has actually conveyed the lot to Findlay, how his rights could be injured by a final decree. Had the conveyance to the Jones's been proved, it will not be pretended that Garrison would be a necessary party, and it is difficult to distinguish, as it regards his interest in the case, between a conveyance to the Jones's and to Findlay. In either case, he is estopped by his deed to set up any right of an equitable nature. But, as the supreme court have so decided, it must be admitted that Garrison is a necessary party, and he is made a party to the suit. He admits the conveyance to the Jones's, and disclaims all interest in the case and asks to be dismissed, and the bill as to him stands dismissed.

The cases are numerous, where a reason is shown why a person is not made a party, as, want or jurisdiction, the court will retain the case and decree between parties before the court; if they can do so without affecting the interests of those who are without its jurisdiction. And it is fairly to be presumed, if the original bill had stated that Garrison, being a citizen of Illinois, was not within the jurisdiction of the court, and could not therefore be made a party, that the supreme court would have sustained the jurisdiction. The late proceedings in the case amount to this, and the additional fact is solemnly admitted by Garrison, that he executed a conveyance to the Jones's. This shows that he has no interest, in addition to his disclaimer, and as the bill has been dismissed as to him, it must stand as though Garrison were not a party to the suit, as he in fact is not, and the facts upon the face of the proceeding show why he is not a party. This objection, therefore, to the jurisdiction of the court cannot be sustained.

An objection is made to various depositions which were admitted at a former hearing of the case, and which were not legally admissible, except under an agreement previously made: and, it is contended, that this agreement cannot be considered in force now. That it cannot be extended beyond the hearing formerly had in the case, and on the appeal to the supreme court. And it is urged as an additional reason, that new matter has

been introduced into the case by the complainants and defendants, and also other parties. This objection does not seem to have much force. The agreement was, to admit the depositions now objected to, without any conditions, as to any subsequent changes in the cause that might take place. The effect of the agreement was to legalize the depositions; to place them on as favorable a footing as if they had been taken between the same parties, and in conformity to law. The objection, as to new parties, can only refer to Garrison, and he, in fact, is not now a party; but, if he were, the introduction of his name makes no change in the merits of the case.

The case has been brought to a hearing under the agreement, as to the admission of this evidence, and we think the agreement is as binding now, as it was before the former hearing. As well might the objection be urged to the admission of depositions legally taken and used at the former hearing. They stand on no better footing than the depositions covered by the agreement. The receipt of Garrison is objected to, because it has not been proved by the subscribing witness. This receipt is more than thirty years old, and the instrument is apparently authentic, and stands connected with other facts proved, which go to establish it; and under such circumstances, proof of its execution, by the subscribing witness, may be dispensed with. 1 Starkie, 342. Circumstances go strongly to show, independently of the admissions of Garrison, that a deed was made by him to William and Michael Jones; but whatever doubt may be suggested as to the execution of the deed, there can be none as to the receipt which vests the equity to the lot in them. The bond set up in the supplemental bill for two hundred and fifty acres of land, executed by Bradshaw is proved, and also the other facts connected with it. This land was sold for four hundred dollars, which were received by Thomas Doyle, the father who assigned the bond. This act, it is said, was not obligatory on Thomas Doyle, Jr., and on coming of age, he might have disaffirmed the contract. If this were admitted it cannot avail, for he died before he became of age, and his legal representatives affirmed the contract. In consideration of having received and appropriated the above sum, the father procured the deed for the lot to be made to his son. Thomas Doyle, Sr., was at this time somewhat embarrassed; but there are no facts in the case, when viewed in connection with the circumstances, which show this to have been a fraudulent transaction. The motive of the father, in doing justice to his infant son, seems to have been commendable. William and Michael Jones were engaged as partners in trade, and at the time the deed was executed, it was, probably, the impression of William, the active partner, that he could convey the real estate of the partnership the same as the personal.

The deed, however, having been executed by one of the partners only, could convey to Thomas Doyle, Jr., no more than a moiety of the lot. But as the deed of Garrison is not established, this conveyance, and the one that was subsequently executed by Michael Jones, could only be considered as conveying the equitable interest to the lot. The heirship of Belinda, the wife of Hinde, is controverted. James and Margaret Bradford, the father and mother of Belinda, were reputed to be married, and lived together as man and wife. And the will of Bradford recognizes her as his wife, and that she at the time was pregnant. On this point the proof is satisfactory, and is not shaken by the unsettled rumors, which may have been circulated as to the manner in which the marriage was solemnized. The facts authorize the presumption of a legal marriage. Thomas Doyle took this lot as a purchaser, and it descended to his half sister, he having neither brother nor sister of the whole blood. It is not material to enquire whether this lot was sold by the sheriff as the property of Thomas Doyle, Sr., for if it were sold, as alleged by Vattier, the sheriff could convey no title to it, as Doyle had none. In this purchase by Vattier, if made, no title was received, and consequently, if he conveyed the lot to Findlay, of which there is much doubt, having no right he could convey none. Findlay having investigated the title, was made acquainted with it by Henderson, the recorder, and he then for seven hundred dollars induced Garrison to make him a deed for the lot, which was worth at the time, more than thirty thousand dollars. Garrison, at the same time, conveyed to his son twenty-three feet of the lot. These circumstances, and the facts proved, go to establish notice, as against Findlay, and the enquiry then arises, whether Vattier, in receiving the conveyance from Findlay had notice. There would seem to be little room to doubt that Vattier had notice. He had examined the title, set up a claim to the lot under a sheriff's sale, and alleges that he conveyed it to Findlay. He knew it was called Doyle's lot, and of the sale to Doyle by William and Michael Jones, he had some knowledge. He knew of Doyle's, and subsequently of Hinde's claim. In searching the record he must have found the deed from William Jones, in his own and his brother's names to Thomas Doyle, Jr., which recited the deed from Garrison to them. In any point of view in which the facts can be considered, Vattier had notice of such facts as would have led him, by the use of ordinary diligence, to a full knowledge of the state of the title. Any want of knowledge, therefore, of which he may now complain, is chargeable to his own negligence. Sugd. Vend. 498; 1 Atk. 489; 2 Ves. Jr. 440; 4 East, 220. The conveyance to Cummins, as set up in the amended answer of Vattier, is answered by the special replication of the complainants, filed

without objection, that the lot was immediately re-conveyed to Hinde, for the use of his infant children. The beneficial interest is in the minor heirs of Belinda Hinde, and the suit is prosecuted as well before as after the conveyance to and from Cummins, in their behalf. These conveyances, therefore, do not change the nature of the interest now under consideration.

Upon a full consideration of the case, and finding the equity of the complainants sustained by proof, and that both Findlay and Vattier are chargeable with notice of the equity of Thomas Doyle, Jr., at the time they received their deeds for the lot, the court will decree that Vattier, Findlay having now no interest in the premises, shall convey all his right and title to the property to the complainants in pursuance of the right asserted in their bill.

NOTE. This case was appealed to the supreme court, and the principles laid down by the circuit court, so far as they regard the merits of the case were sustained; but the decree was reversed on the ground that the matter as to the re-conveyance of the lot by Cummins to Hinde, should have been introduced into the case by the amendment of the bill, and not by special replication. This point was not raised in the circuit court, the replication having been filed with the consent of parties, in fact, and without the knowledge of the court. It does not appear, however, on the record, that special leave was given to file the replication. [The cause was remanded with directions to permit the complainants to amend their bill so as to introduce the matter of the conveyance mentioned.] Vattier v. Hinde, 7 Pet. [32 U. S.] 252.

[During the progress of this suit in the circuit court an action of ejectment was brought by the lessee of Vattier v. Thomas S. Hinde and Wife, and a verdict obtained in favor of the plaintiff. Upon a writ of error being taken, the supreme court affirmed the judgment of the circuit court. 5 Pet. (30 U. S.) 398.]