## CHARLES H. BAKER, RESPONDENT, *v.* JOSEPH A. BLISS AND JAMES N. PINNER, IMPLEADED, &c., APPELLANTS.

*Conveyance—Fraud—Resulting Trust—Notice to Purchaser.*

Where an insolvent husband, holding a deed of premises not on record, delivers the same up to 'his grantor to be canceled, and procures a deed of the same premises to be made to his wife, such deed is fraudulent as to creditors, and void.

A person purchasing such premises under circumstances sufficient to put him on inquiry as to the bonâ fides of such transaction, although he have no actual notice of the fraud, must be deemed to have had constructive notice, and cannot be considered as a bonâ fide purchaser for value.

THIS action was brought to declare and enforce a resulting trust, in favor of the Plaintiff, as the judgment-creditor of the Defendant, Joseph A. Bliss, against certain real estate in the hands of the Defendant Pinner.

On the seventeenth of November, 1859, the Plaintiff recovered a judgment, in the Supreme Court, against Joseph A. Bliss, Defendant, and his copartners (comprising the firm of Bliss, Owen & Co.), on a note of the firm dated February 1st, 1858, for $909.49. The firm had been in business at Tonawanda, where Bliss and Pinner both resided on the sixth of July, 1857. Bliss bought a village lot of Henry Hill and wife, for $1,400, and took a contract for the same. He paid a portion of the consideration money, and gave a note for a portion; and on the fourth of September, 1858, he took a deed of the property. Afterwards, and on the seventeenth of May, 1859, Bliss, who was then insolvent, with the intent to defraud his creditors, redelivered the deed (which had never been recorded) to the attorney of Hill and wife, the grantors, had the seals and signatures torn off, and a new conveyance of the property made to his wife, which was duly recorded on the nineteenth of May.

A judgment was recovered against Bliss for the balance of the

purchase-money, and Holbrook, Dee & Co., to whom the judgment was assigned, commenced an action against Bliss and wife, to set aside the conveyance to Mrs. Bliss as fraudulent, and an injunction was obtained restraining the sale of the property.

Pinner was a merchant at Tonawanda, and had been for several years. Bliss had dealt with him, principally by drawing orders on him in favor of third parties. On the twenty-seventh of April, 1859, Bliss owed him $358.83. In May, 1859, he paid him $175 in cash, and on the twenty-eighth of April, 1859, gave him his note for $175, due at the Manufacturers and Traders' Bank in sixty days. This was renewed for some twenty or thirty days, Bliss calling and saying he was not prepared to take it up when due.

The renewed note was not paid. Pinner continued to sell goods to Bliss, till about the twenty-sixth of July, 1859, when Bliss ceased to draw orders. Nothing was afterwards paid on the note or on account, though Pinner did all he could to collect it, as he thought, except to sue. Pinner would not have trusted Bliss for goods, for more than a trifling amount, at any time after July, 1859. On or about the ninth day of January, 1860, Bliss proposed to Pinner to give him a mortgage upon the property in question for the balance due on the note and account, and told him he was going to give his brother a mortgage, also, to raise some money. He said he wanted to make up mortgages to some $700, $800, or $1,000, to secure Pinner, and raise money for other purposes. Pinner, thereupon, proposed to buy the premises if the title was all right, and offered him $1,000 for them. Bliss wanted $1,200. On the evening of the ninth of January they had another talk. Pinner then told Bliss he would pay him $550 cash, give him his note for $150, and that this, with his debt, would make $1,000. Bliss accepted, and it was agreed that Pinner, Bliss' and his wife, should go to Buffalo the next day to close the trade.

The terms of the sale were substantially settled before Bliss communicated with his wife on the subject. Pinner had no notice of the deed to Bliss. On the tenth they went to Buffalo, and there Pinner employed an attorney to investigate the title. The

attorney was not informed of anything to indicate that Bliss was in debt, or that he had or might be claimed to have any interest in the premises, except that he was informed in some way that the action, before alluded to, had been brought by Holbrook, Dee & Co. against Bliss and wife; that an injunction had been obtained in it against disposing of the land, and that the suit was brought by Holbrook, Dee & Co. to *recover a debt against Bliss*, about this property.

He sent his clerk to the clerk's office, who examined the records, and who, on his return, told him there was nothing in the records against Mrs. Bliss; and thereupon he advised Pinner that the title was good.

They then went to the office of the attorney of Holbrook, Dee & Co. Pinner gave him the money with which to raise the injunction, and he went out and presently returned with a release thereof; and the deed was then delivered, and the rest of the money paid, and Bliss took Pinner's note and the balance of the money.

At the time Pinner received the conveyance from Mrs. Bliss, he had been informed, and believed, that the action brought by Holbrook, Dee & Co., in which the injunction had been obtained, was commenced *to recover a debt against Bliss for a part of the purchase-money of the premises.* He had also heard and supposed that Bliss had paid a part of the purchase-money of said premises, and had purchased the property.

He had learned, from common report, that Bliss, Owen & Co. had failed. He also knew of some other outstanding debts against Bliss.

The action was referred to the Hon. Nathan K. Hall, as referee, who found that the conveyance to Bliss's wife was fraudulent; that Pinner had no actual notice of the fraud, that there was a resulting trust, knowledge or notice of the facts which rendered the deed fraudulent and void as against creditors; and as a matter of law, that the facts proved were sufficient to put Pinner upon inquiry, and amounted in law to constructive notice, and rendered judgment in favor of the Plaintiff.

Exceptions were taken to his report, and upon appeal to the General Term, the judgment was affirmed with some modifications, not material to be stated, and the Defendants appealed to this Court.

*Asher P. Nichols* for Appellant.

*Sherman S. Rogers* for Respondent.

MILLER, J.—It is declared by 1 R. S. 728, § 51, that "Where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made ; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section."

The next section (52) provides that "Every such conveyance shall be presumed fraudulent, as against the creditors, at that time, of the person paying the consideration ; and where a fraudulent intent is not disproved, a trust shall result in favor of such creditors, to the extent that may be necessary to satisfy their just demands." A subsequent section (54) contains a saving in favor of the purchaser for a valuable consideration without notice of the trust.

The premises in question in this case were purchased by Joseph A. Bliss, and the purchase-money mainly paid by him, prior to the conveyance to his wife. After the conveyance was made to the husband, the deed to him was destroyed, and another deed executed by the grantors, by the direction of the husband, to the wife. Under this state of facts, there can be no question that the conveyance to Mrs. Bliss was fraudulent as against the creditors of her husband, to whom he was indebted at the time, and that they were entitled to the benefits arising from the property, to the extent of their demands, except as against a bonâ fide purchaser.

The Defendant, Pinner, paid a valuable consideration for the purchase of the property, and whether he was or was not a purchaser for value, depends upon the fact whether he had actual

notice of the facts existing in reference to the title, or what, in law, is equivalent to such notice, such knowledge as to put him upon inquiry.

There is no evidence to show that Pinner had actual knowledge of the facts, and his own testimony establishes that he did not have such knowledge. The referee has also found that, at the time Pinner paid for and received the conveyance, he had no actual notice or knowledge of the facts which rendered the conveyance fraudulent and void as against creditors, or created a resulting trust in their favor, but that he had sufficient knowledge to put him upon inquiry, and that such knowledge was equivalent to notice, and in law amounted to constructive notice, and entitled the Plaintiff to judgment.

The question then arises, whether the facts presented upon the trial sustain the conclusion of the referee, that there was sufficient evidence to put Pinner upon inquiry. Before discussing the legitimate effect resulting from the facts proved, it may be well to refer to the principles which govern and control cases of this character. In Williamson *v.* Brown (15 N. Y. 362), Selden, J., lays down the rule, " that where a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered a bonâ fide purchaser." (See also 4 Kent's Com. 179; Hinde *v.* Vattier, 1 McLean, 110; Nantz *v.* McPherson, 7 Mon. 599; Cotton *v.* Hart, 1 A. K. Marshall, 56; Woodpour *v.* Blount, 3 Hay. 147; Harris *v.* Carter, 3 Stewart, 233; Benzein *v.* Lenoir, 1 Dev. Eq. R. 225; Hawley *v.* Cramer, 4 Cow. 718.)

To charge a party with notice, the circumstances known by him must be such as ought reasonably to have excited his suspicion, and to have led him to inquire.

It appears to me that, in the case at bar, there were many facts within the knowledge of Pinner which were calculated to arouse his suspicions, and to put him upon inquiry. He was a creditor

of Bliss, and his debt had been due since about the first day of July, 1859, and he had made ineffectual efforts to secure or collect it by negotiations with Bliss for security by mortgage upon the property finally conveyed to him. He had been informed that the firm, of which Bliss was a member, had failed, and after July, 1859, he refused to trust Bliss. He also had notice that Bliss had paid a portion of the purchase-money for the land, and that he still was indebted for .the remainder. He knew that a suit had been brought to collect the unpaid purchase-money out of the property, that an injunction had been issued restraining its sale, and that it was removed by his paying a portion of the consideration money he had agreed to pay for the premises to liquidate the demand.

He also was acquainted with the fact that Bliss owed other debts and demands, and that the conveyance had been made to his wife, on the nineteenth of May, previous to the time when Bliss had failed to meet Pinner's note.

It is very evident to my mind that the facts to which I have adverted were quite enough to excite suspicion, and to put Pinner upon his guard; and in the exercise of that caution and diligence which men are accustomed to exercise in making purchases of property, he had strong reasons to suppose and believe that the premises belonged actually to the husband, and that the conveyance was made to the wife for the purpose of placing the property beyond the reach of his creditors. He was therefore, I think, clearly bound to make inquiry as to the facts existing in regard to the title, and the grounds upon which the suit had been commenced, and the injunction issued.

Had he merely procured an examination of the papers in the injunction case, it would have disclosed the fact that the purchase-money of the property had been paid by Bliss, if not already known, and that the property was liable for the payment of his debts. This would also have led to the further development of the existence of the judgment against Bliss, and an examination of the record would no doubt have disclosed the fact that the indebtedness had accrued prior to the conveyance to Mrs.

Bliss. With the negotiations made with Bliss himself, to secure Pinner's demand against him out of real estate, the title of which was in his wife's name, and the suspicious circumstances which pervaded the whole transaction, it is difficult to conceive how Pinner could have failed to discover the fraudulent character of the transaction. At least, with the information and knowledge which he had, how he could have neglected to make a further examination, which must inevitably have led to a revelation of the fact that the husband, and not the wife, was the actual owner of the property.

Although the question involved is one of good faith, yet in judgment of law a want of caution and diligence, such as an honest man would ordinarily exercise, is a want of good faith (Pringle v. Phillips, 5 Sand. Sup. C. R. 157 ; Danforth v. Dart, 4 Duer, 101). And Pinner having failed to exercise that caution and diligence, the referee was entirely justified in the conclusion at which he arrived upon the question presented to him. ·

It is said that the fact that the referee finds that Bliss was insolvent at the time of the delivery of the deed to his wife, is unimportant, as Pinner did not know it. The referee has found certain facts, from which he has drawn the conclusion that Pinner ought to have made inquiry ; and even if we assume that Pinner did not know that Bliss was insolvent at the time of the conveyance to his wife, Pinner's want of knowledge of that fact is not entirely conclusive, provided he had sufficient knowledge of the facts to call into exercise his caution and prudence, and to cause him to make inquiry. As is already apparent, there were many circumstances which indicate that he ought to have made inquiry. He had been informed that the firm of which Bliss was a member had failed. He knew that Bliss himself, a few weeks after the deed to his wife, had failed to meet his engagement, and again, very soon afterwards, had not paid his renewed note, and was considered irresponsible after this. These facts transpired some time before the conveyance to Pinner, and in connection · with what he had learned prior to this time as to the existence of the injunction, and of debts against Bliss, with other circum-

stances not necessary to be stated, tended to prove that Bliss's insolvency must have dated back anterior to the time when the property was conveyed to his wife.

If these facts did not satisfy Pinner upon that question, certainly they were enough to induce him to investigate and ascertain what the actual condition of Bliss was in a pecuniary point of view.

The existence of insolvency at any time of itself would naturally lead to the inquiry as to how far back it extended as to time. Especially would this be the case when it was proposed to secure the debt of the insolvent by a lien on the real estate held in the name of the wife, as was done here; and it cannot be fairly and reasonably claimed, I think, that the pecuniary circumstances of Bliss, as known to Pinner, when he took the deed, were not of such a character as to attract his attention.

The period of time during which the facts relating to the transaction occurred was not very extended, and the case before us bears no analogy to Frazer v. Western (1 Barb. Ch. R. 220), to which we have been referred by the counsel for the Defendant, where the insolvency of the husband existed, and the conveyance was made to the wife, five years prior to the transfer by the wife to another party, and that party had no acquaintance with the husband or his circumstances, so as to make it his duty to inquire whether the deed was fraudulent.

In this case, independent of the fact that Pinner knew that the deed was not founded upon a pecuniary consideration, as is manifest, there were other circumstances which stamped the conveyance of the property to the wife as a fraud upon creditors, which should have awakened inquiry. The fact that Pinner advised with counsel does not, I think, relieve him from the consequence of his failure to make inquiry.

The judgment must be affirmed.

Affirmed.

JOEL TIFFANY,
State Reporter.

23