JANVRIN v. JANVRIN & a.

A knowledge of such facts and circumstances as would put a person of ordinary care on inquiry, and, if traced and understood, would lead to a knowledge of title in a third party under an unrecorded deed, is sufficient to charge a purchaser with constructive notice of that title. Such notice may exist without a change of possession under the deed.

If a wife has an inchoate claim for alimony at the time of filing her libel for a divorce, it cannot be said to exist after the libel is dismissed ; and if the husband subsequently obtains a divorce, and is ordered to pay alimony, a voluntary conveyance by him previous to the filing of his libel is not necessarily fraudulent as against her.

BILL IN EQUITY. Facts 'found by a referee. George Janvrin married the plaintiff in 1870, having at that time a son and four daughters by a former wife. There was an ante-nuptial agreement that at his decease she should have $1,000 and all household furniture then belonging to him. April 8, 1874, she left him, and filed a libel for divorce against him, alleging extreme cruelty as the cause, which, at the January term, 1878, was dismissed. February 8, 1878, he commenced proceedings for divorce against her, whereupon a divorce was decreed at the October term, 1878. It was also decreed that he should pay her $1,400 alimony. On this decree an execution was issued, which, in November, 1878, was levied on a certain piece of real estate in Exeter called the Academy lot.

In 1871, George Janvrin, wishing to settle his worldly affairs, began to give deeds of his real estate to his children and grandchildren. This he continued to do, till the last piece was conveyed to his daughter, Anna D. Curtis, in January, 1877. Two or three of these conveyances were made before his wife left him. All the deeds but one were without any money consideration, but at the time of their execution George was not in debt.

Upon the Academy lot there was a house having two tenements and a stable. For several years prior to 1870 George occupied the easterly tenement with his daughters. His son Albert and his family have lived in the westerly tenement for more than fifteen years. After George's marriage his daughters occupied the east part of the house for about three years. In 1867 Albert failed in business, and has been insolvent ever since. April 23, 1874, George gave a deed (recorded April 24, 1874) of the Academy lot to his brother Jefferson, but it was given to him for the purpose of his conveying it to Albert for life, then to his wife Sarah Amanda for life, if she survived him, and then to his four children. This purpose Jefferson very soon carried out, but the deed was never recorded. In July after its date, George delivered this deed to Albert, and Albert delivered it to his wife, and it remained in her possession until April, 1877, when George, under some false pretence, took it from her possession, without her consent and against her protest, promising to return it. He never did return it, but destroyed it. January 1, 1878, Jefferson deeded the Academy lot to George without consideration, and this deed was recorded June 24, 1878. On the same day a deed of this lot from George Janvrin to George J. Curtis, his grandson, was recorded, the consideration of which was an agreement by Curtis to support George during life, and to pay a note of $350, which the latter was liable to pay.

The referee found that the deeds from Jefferson to George and from George to Curtis were fraudulent and void as to the alimony awarded to the plaintiff, and that the deeds from George to Jefferson, and from Jefferson to Albert and wife and their children, conveyed a good and legal title to the grantees, and that these deeds were not fraudulent as against the plaintiff. At the time of this last mentioned conveyance, George owned other real estate, more than enough in value to pay the alimony. But there was no apparent change in the use of the house and land on the part of Albert, and it was not generally known that he had a deed. He withheld it from record, in order to prevent his creditors from attaching his interest. August 28, 1876, he conveyed his interest in this lot to Sarah Willey, his wife's mother, by a deed that was not recorded until after the levy of the plaintiff's execution. She expended money in making repairs to the amount of $300 or $400. The repairs were all made under the direction of Albert, as her agent. He and his family were poor, and she allowed them to live there, and to collect the rent and use it. There was no apparent change after this conveyance, and no one knew of the deed except Albert and wife and the witnesses.

At the time of the levy the plaintiff was not aware of the deed to Albert and family from Jefferson, or of the deed from Albert to Mrs. Willey, but from the time of her marriage she knew of the occupation of the westerly tenement of the Academy lot by Albert

She had no actual notice of the claim of Albert and family and of Mrs. Willey prior to the levy.

The referee found that the plaintiff did not acquire any title to the premises by her levy.

The defendants demurred to the bill, claiming that the plaintiff has an adequate remedy at law.

*Stickney & Wiggin,* for the plaintiff.

I. The title of all the defendants is void against the plaintiff's levy, because the deeds were not recorded. G. L., c. 134, s. 4; 1 Story's Eq., s. 399, *note; M'Mechan* v. *Griffing,* 3 Pick. 150. The decisions require that there should be a change of possession coupled with undoubted acts of ownership and accompanying a change of title, to be constructive notice of title. *Rogers* v. *Jones,* 8 N. H. 272; *Stowe* v. *Meserve,* 13 N. H. 46; *Emmons* v. *Murray,* 16 N. H. 398; *Patten* v. *Moore,* 32 N. H. 385; *Bell* v. *Twilight,* 22 N. H. 521; *M'Mechan* v. *Griffing,* 3 Pick. 150; 4 Kent Com. 172.

II. The plaintiff and her husband had separated before April 8, 1874, and they never afterwards lived together. The acts and conduct of George, which entitled the plaintiff to alimony upon separation, had all taken place before that date. From that time, if not a creditor technically, she had the rights of a creditor. *Livermore* v. *Boutelle,* 11 Gray 217; *Chase* v. *Chase,* 105 Mass. 385; *Burrows* v. *Purple,* 107 Mass. 428; *Morrison* v. *Morrison,* 49 N. H. 69. Under the law of this state, a voluntary conveyance is fraudulent as against any obligation existing at the time, whether absolute or contingent. *Carlisle* v. *Rich,* 8 N. H. 44; *Nims* v. *Bigelow,* 45 N. H. 347; 2 Kent Com. 441.

We say further, that the plaintiff had all the rights of a creditor from the date of her marriage. Her rights, whatever form they might take, grew out of the marriage relation, and George Janvrin had no right to make conveyances that would defeat her rights, nor to make voluntary conveyances that would defeat them.

*Marston & Eastman, A. R. Hatch, Shapley,* and *Cate,* for Sarah Willey, Sarah A. Janvrin, and Sarah's children.

FOSTER, J. At the time of the plaintiff's levy in November, 1878, there was no record evidence of title to the premises in any of the defendants. For want of such record the title of all the defendants is void as against the plaintiff's levy (G. L., c. 135, s. 4), unless the plaintiff had notice of the defendants' title, or was not in fault for being ignorant of it.

The principal question in this case, as we understand it, is, whether the finding of the referee is warranted by the evidence. His finding is, that the deeds under which the defendants claim title were not fraudulent as to the plaintiff. And, although he

does not report in so many words that she is chargeable with notice of the existence of those deeds, the conclusion is irresistible that he could not have made his general finding without deciding that point adversely to the plaintiff. The question, then, reduces itself to this: Is the evidence competent to show that the plaintiff was chargeable with notice of the defendant's title?

Although it was formerly considered as "a doubtful point whether implied notice will supply the absence of the registry of a prior conveyance" (*Kent*, C. J., in *Jackson* v. *Given*, 8 Johns. 137), the doctrine has become established in England and in this state that notice may be implied in law from certain facts and circumstances. *Colby* v. *Kenniston*, 4 N. H. 262; *Bell* v. *Twilight*, 22 N. H. 500, 519; *Jones* v. *Smith*, 1 Hare 43; 1 Story Eq., s. 399, and note 4. As a matter of law, a person may be charged with such information as he would have obtained upon an investigation of such existing facts and circumstances as would put a prudent person upon inquiry; and if such facts exist, and come within his observation, he is bound to inquire, or suffer the consequences of an estoppel to deny notice of all that he might have discovered with reasonable diligence. *Warren* v. *Swett*, 31 N. H. 332; *Scripture* v. *Soapstone Co.*, 50 N. H. 571; Hill. Vend. 408. Whether such facts exist as should put a person on inquiry, and whether a person was actually put on inquiry, are questions of fact, one or both of which the referee in this case must have answered in the affirmative.

The defendants were in the open and visible possession of the premises, which the plaintiff claims by virtue of her levy. Was their possession, together with the attendant circumstances, sufficient to put the plaintiff on inquiry as to their title? Although in this state possession of the grantees under an unrecorded deed would not be conclusive evidence of title or of constructive notice, it is undoubtedly sufficient to put a purchaser or a levying creditor upon inquiry as to the existence of a deed, and to charge him with knowledge of what he would have learned upon examination, unless he shows that he has made diligent but ineffectual inquiry. *Ferrin* v. *Errol*, 59 N. H. 234; *Patten* v. *Moore*, 32 N. H. 382. A knowledge of facts, which, if traced and understood, would lead to a knowledge of title, is sufficient to charge a purchaser with notice. *Tardy* v. *Morgan*, 3 McLean 358; *Landes* v. *Brant*, 10 How. 348.

The plaintiff contends that "the decisions require that there should be a change of possession, coupled with undoubted acts of ownership, and accompanying a change of title, to be constructive notice of title." Undoubtedly in many, perhaps in a majority, of the cases, the circumstances are connected with a change of possession, accompanying a change of title, in the party holding under the unrecorded deed; but a change of possession is not essential to putting a subsequent purchaser or creditor upon inquiry. *Parker*,

J., in *Rogers* v. *Jones*, 8 N. H. 264, 272, says,—"It is the change of possession, or, at least, some manifest act of ownership, which attracts attention, and which alone should charge third persons with notice, and not the mere remaining in possession after an entry which was under no color of title."

The cases of *Emmons* v. *Murray*, 16 N. H. 385, and *Patten* v. *Moore*, 32 N. H. 382, may seem to support the plaintiff's view to some extent; but we do not understand these cases as prescribing a legal qualification of the general rule, that open exclusive possession may be notice sufficient to call for examination and inquiry. It can hardly be possible that there should be a definite and certain legal rule other than that possession and exclusive acts of ownership might be enough to put a purchaser on his guard. The facts and circumstances must naturally be infinitely various in cases of this character; and whether a party was put upon inquiry, or whether his want of knowledge is attributable to his own negligence and want of ordinary care and prudence, are necessarily questions of fact. *M'Mechan* v. *Griffing*, 3 Pick. 149.

In this case the circumstances were sufficient to warrant the referee in coming to the conclusion that the plaintiff was chargeable with notice of the defendants' title. She was the wife of George, and naturally might have had knowledge of his intention of disposing of his property and of the conveyances that he made, before she left him. At the time of her departure, he was engaged in carrying out this scheme. When she went away, and when she returned, Albert and his family were in possession of the premises, exercising acts of ownership over the property. This was a circumstance bearing on the question whether on her return she ought not, as a prudent person, to have inquired what, if any, conveyances her husband had made in her absence. An examination of the records would have shown that her husband had conveyed the Academy lot to Jefferson, that Jefferson had subsequently reconveyed the same lot to her husband, who immediately conveyed it to Curtis. This knowledge might naturally have suggested to a prudent person the further question, how it happened that the record title was in Curtis, and the possession in Albert and Mrs. Willey; and a proper investigation of this subject might have disclosed the unrecorded deeds. But these speculations raise no question of law, and their determination was exclusively within the province of the referee. *Jones* v. *Smith, supra; Hinde* v. *Vattier*, 1 McLean 110; *Nute* v. *Nute*, 41 N. H. 60; *Jackson* v. *Cadwell*, 1 Cow. 622; *Smith* v. *Low*, 1 Atk. 490.

The plaintiff further contends, that at all events the title of Albert's wife and children cannot be sustained as against the plaintiff, because it is derived from a voluntary conveyance, which must be regarded as invalid as against her, an existing creditor. But we do not think the facts warrant this conclusion. If the plaintiff had any inchoate claim for alimony at the time of the

filing of her libel against her husband, it could not be said to exist after the libel was dismissed, and at the time of his conveyance to Jefferson. At that time he was not indebted to his wife or anybody else, beyond most abundant means retained by him; and the better opinion seems to be, that, even as against antecedent debts, a voluntary settlement or conveyance is no more than presumptive evidence of fraud, and that the conclusion of fact will depend upon the amount of the debt and the estate of the seller or grantor, and perhaps other circumstances. 2 Kent Com. *441, notes. A voluntary conveyance is not *per se* fraudulent, even as against creditors, to whom the grantor was indebted at the date thereof. *Bank of U. S.* v. *Housman*, 6 Paige 526; *Van Wyck* v. *Seward*, 6 Paige 62. A fraudulent intent must exist. *Seward* v. *Jackson*, 8 Cow. 406. But in this case it does not exist. *True* v. *Congdon*, 44 N. H. 48, 55.

Having considered this case upon its merits, and not upon the question whether the defendants' demurrer should have been sustained, the order must be,—

*Bill dismissed.*

CLARK, J., did not sit: the others concurred.